[Civ. No. 13180.   Second Dist., Div. One.   June 10, 1942.]

RUPERT B. TURNBULL, Respondent, v. R. L. WILHELM, Appellant.

598

Stephenson, Gingery & Rowe for Appellant.

Rupert B. Turnbull in pro. per. for Respondent.

WHITE, J.—This action was brought to recover a certain sum of money allegedly due plaintiff from defendant. The cause of action embraced two counts. The first count sought a recovery of $2,871 claimed to have been "had and received for the use and benefit" of plaintiff by defendant. The second count was to recover the same amount, which it was charged defendant had "promised and agreed to pay" to plaintiff. The cause was tried before the court sitting without a jury, and resulted in a judgment for plaintiff on count two, while the allegations contained in count one were determined to be untrue. This appeal is by defendant from the judgment and the order denying his motion for a new trial.

So far as the factual situation forming the background of this litigation is concerned, we find in the record substantial evidence that there was pending in the federal court, before the Honorable Samuel W. McNabb, referee in bankruptcy, a certain bankruptcy proceeding entitled "International Cinema, Inc., a corporation, Bankrupt." A prior reorganization proceeding under section 77B of the Bankruptcy Act had failed, and bankruptcy adjudication ensued. Referee McNabb sent for the respondent, who was an attorney at law practicing his profession in Los Angeles and who had theretofore been a referee in bankruptcy in the Southern District of California. When in response to the invitation of the referee,

respondent called upon him, the latter stated that he had a peculiar situation in the aforesaid case pending before him; that there was a modern film plant in Los Angeles which had been built as a cost in excess of $200,000 contributed by the stockholders thereof; that certain stockholders had written him many letters asking if there were not some method by which they could, at least in part, salvage their investment. Referee McNabb stated to respondent that he could not answer the letters because he was acting as a judge in the matter, which precluded him from giving legal advice or offering an opinion on legal matters. He suggested to respondent that the latter get in touch with the stockholders and do something about the matter. Respondent told Referee McNabb that he did not wish to be in the position of soliciting business as an attorney, whereupon the referee advised him to get in touch with appellant, Wilhelm, who was an auditor, and had theretofore engaged in such reorganization work, and to arrange with Wilhelm to answer the letters of the inquiring stockholders.

In August, 1938, respondent sent word to appellant that he desired to see him. Pursuant to this invitation, appellant came to respondent's office, at which time respondent detailed to appellant his previous conversations with Referee McNabb, after which it was agreed between them that appellant should read the letters written by the stockholders to the referee and attempt to effect a reorganization plan with such stockholders, appellant to handle the auditing, bookkeeping and technical work, and respondent to take care of such legal work as might arise. Thereupon respondent advanced Wilhelm twenty-five dollars to obtain a permit from the Commissioner of Corporations of this state which would allow Wilhelm to contact the stockholders for the purpose of effecting a reorganization plan. Upon obtaining the permit, appellant went to San Francisco, where the majority of the stockholders resided, and contacted a number of them. As a result, a stockholders' protective association was formed, with a governing committee of three of the majority stockholders. At appellant's request, respondent then went to San Francisco and appeared before this committee. After making an investigation of respondent, and being satisfied of his ability to handle the legal aspects of the reorganization plan, the committee employed him as an attorney to obtain a continuance of the bankruptcy sale and to work out a plan by which

the property might be salvaged and turned back to the stockholders as an operating concern. The stockholders' committee sent a notice of this action to the various stockholders, advising of the plan, which was to organize a new corporation called Cinema Laboratories, Inc., composed of the California stockholders of the bankrupt International Cinema, Inc., and to buy up the assets of the bankrupt company.

Pursuant to this plan, the Commissioner of Corporations of the State of California issued his permit, dated December 30, 1938, which in part reads: ". . . applicant proposes to sell and issue an aggregate of not to exceed 300,000 shares of applicant's common stock to the stockholders of International Cinema, Inc., at 30 cents per share, for cash, of which 5 cents thereof is to be paid for expenses, legal fees and remuneration to R. L. Wilhelm to complete the formation of said corporation and turning over of the business and assets of International Cinema, Inc. . . ." The permit then proceeds to grant such authority to the applicant, Cinema Laboratories, Inc. The commissioner subsequently authorized the issuance of 60,000 shares of preferred stock of the new California corporation. Under the amended plan, certain of the larger creditors of the bankrupt corporation sold their claims, receiving in payment therefor the preferred stock of the new corporation, and in addition were paid thirty cents on the dollar in cash. In this manner the new corporation, through appellant, R. L. Wilhelm, as fiscal agent, acquired in excess of ninety-eight per cent of the creditors' claims against the bankrupt corporation and was thereby enabled to purchase the assets of such bankrupt corporation. These assets were then delivered by appellant to the new California corporation, Cinema Laboratories, Inc., and that corporation was then in possession of assets controlled entirely and operated by the officers and board of directors which the old stockholders of International Cinema, Inc., participating in the new corporation, then elected. In this manner the result originally intended was accomplished, that is to say, the payment of the creditors of International Cinema, Inc., and the salvaging of the equity of the bankrupt corporation for its investors.

At a meeting of the stockholders of the defunct corporation who were to become stockholders of the new Cinema Laboratories, Inc., attended by appellant and respondent, it was agreed that each stockholder was to deposit five cents for each share of stock received by him in the reorganized cor-

poration, and if the proposed plan of reorganization went through there would be an additional assessment of twenty-five cents per share upon each stockholder, the proceeds of which were to be deposited in escrow, and in the event appellant and respondent were successful in buying from the bankruptcy trustee the plant of the International Cinema, Inc., and all of its tangible assets and possessions and delivering the same to the new company, the trust fund of thirty cents per share was to be utilized to compensate respondent for his services as attorney for the reorganization committee and appellant for his services in handling the business end of the negotiations in connection with the activities and objectives of the reorganization committee. Neither appellant nor respondent had any agreement with the stockholders' protective committee in regard to their respective compensation other than that it was to come out of the so-called "nickel fund" and that neither appellant nor respondent was to demand any compensation from any source other than the last named fund.

There is a sharp difference in the contentions of appellant and respondent as to the terms of their agreement in connection with the payment of their respective compensation from the said fund. Appellant contends that he was to receive one-half of such funds so collected from such stockholders as his own fees for acting as promoter and organizer; that out of the other half he was to pay all expenses, and from the balance he was to compensate respondent for his fees as attorney for the stockholders. On the other hand, respondent contends that the agreement between him and appellant was that all expenses should be deducted from the total of this fund collected from the stockholders; that after the payment of such expenses the remainder should be divided equally between respondent and appellant. The trial court resolved this conflict in favor of respondent's contention.

In urging a reversal of the judgment herein, appellant first asserts that the agreement between himself and respondent upon which the latter seeks to recover is *contra bonos mores*, against public policy, illegal, void, and therefore unenforceable. In support of this argument appellant contends that pursuant to the provisions of the State Bar Act of California (now chapter 4 of the Business and Professions Code), the Board of Governors of The State Bar, with the approval of the Supreme Court, is empowered to formulate

and enforce rules of professional conduct for all members of
The State Bar (Bus. & Prof. Code, § 6076) ; that when such
rules of professional conduct are adopted and approved as
aforesaid, they are binding upon the lawyers of the state,
and wilful violation thereof may be punished by suspension
of the right to practice law (Bus. & Prof. Code, § 6077). We
are then referred by appellant to certain rules adopted by
The State Bar, approved by the Supreme Court, and allegedly
breached by respondent. In that connection, it is contended
that respondent's conduct was contrary to the provisions of
rule 3, which inhibits an attorney from employing another to
solicit or obtain professional employment for him and from
sharing with an unlicensed person any compensation arising
out of or incidental to any professional employment. It is
further urged that respondent's conduct was in violation of
rule 10 of The State Bar, which forecloses a member thereof
from advising the commencement, prosecution or defense of
a case unless he has been consulted in reference thereto, except
where his relation to a party or subject matter is such as to
make it proper for him to do so.

Assuming, as contended by appellant, but not so deciding,
that these rules of professional conduct are binding upon all
members of The State Bar because they are rules of court,
and that such rules of professional conduct represent the
ideas and attitude of the legal profession as a whole as to
what conduct of an attorney is against public policy, never-
theless we find in the record before us no warrant for the
assumption or conclusion that respondent's conduct was either
violative of the rules in question or in any manner contrary
to the public policy of this state. Respondent's initial connec-
tion with the bankruptcy proceeding which resulted in the
reorganization plan toward which he contributed his legal
services was occasioned not by any act of appellant, but arose
by reason of the suggestion made by the referee in bankruptcy
to respondent that the latter contact appellant with reference
to aiding the stockholders of the corporation then harassed
with financial difficulties in the bankruptcy court to salvage
as much as they could of their investment. While it is true
respondent advised the reorganization plan to Mr. Wilhelm
at the suggestion of the referee and further recommended it
to the stockholders at the meetings in San Francisco, he was
nevertheless consulted in reference thereto by stockholders of
the corporation, and in fact was called to San Francisco to

appear before them for the very purpose of discussing his employment by them to handle the legal aspects of the problems confronting them. The fact that this invitation from the stockholders was transmitted to respondent through appellant does not alter the situation.

There is no merit whatever in appellant's contention that respondent's conduct violated the aforesaid rule 3, which prohibits the payment of compensation or the splitting of fees with an unlicensed person who procures the lawyer's employment. Respondent distinctly and unequivocally advised appellant, ''I am not splitting fees with you,'' and that the respective fees agreed upon by appellant and respondent with the stockholders were to be paid to them separately and individually out of what was referred to as the ''nickel fund.'' Furthermore, appellant and respondent each had their separate work to do, and each was to receive one-half of the net accumulation of the ''nickel fund.'' The portion of such fund that came to appellant did not arise out of any fees claimed or received by respondent. Appellant received that money for services as an auditor and organizer which he was to render to the stockholders. The evidence in this case clearly justifies the finding of the trial court that there was no evidence whatever to sustain appellant's contention that the agreement entered into by respondent was against public policy, while the evidence amply supports the finding that ''the agreement between the plaintiff and the defendant was one by which a measure of the compensation to be paid to the plaintiff was fixed and that the same was not contrary to public policy, improper, illegal, or unethical.''

Appellant's next contention is that the action was prematurely instituted by respondent, in that at the time of the commencement thereof respondent had been paid all moneys due him up to that time. This contention is apparently grounded upon the claim that at the time the action was commenced appellant had not received all the moneys payable to him from the ''nickel fund,'' and therefore under his agreement to pay respondent one-half of the net amount received by him, he could not be sued for the money collected but not delivered to him. This claim is without merit. Cinema Laboratories, Inc., by an instrument in writing consisting of a letter addressed to appellant, and admitted in evidence, conceded an indebtedness to him in the sum of $4,022.30. The record further shows that thereafter payment of the last-

mentioned amount less certain claimed deductions was offered to appellant. During the course of negotiations between appellant and Cinema Laboratories, Inc., looking toward a settlement of their differences, the former agreed to accept from the latter the net sum of $2,775, with the proviso, however, that ''It is a further provision of this offer to settle, that no one affiliated with, connected with or representing Cinema Laboratories or the Pathe Corporation shall discuss with or advise the said Rupert B. Turnbull of these negotiations or the outcome thereof. In the event such information is procured by Turnbull from any of the above mentioned sources, this offer is withdrawn forthwith.'' The apparent reason for the language just quoted from the letter in question is supplied by other parts of the communication, which indicate that at the time it was written appellant was seeking to compromise with respondent on the amount of money due the latter from the former. The court was warranted in concluding from the foregoing letter that appellant tried to collect the money unknown to respondent, thereby indicating a breach of good faith on appellant's part. A further and complete answer to appellant's contention is found in the fact that the court did not direct a personal judgment against appellant, but decreed that the judgment was to be paid only out of moneys that might be due or unpaid to appellant by the interested corporations on account of the reorganization services rendered in connection with International Cinema, Inc., and from no other source. The record further shows, and it is undenied, that the judgment herein was in fact satisfied in full by the sheriff from the aforesaid sources as directed by the court in its judgment. We need not concern ourselves with the question raised as to whether or not appellant by his conduct prevented the collection by him of the moneys in question, because the fact remains that the corporations holding the money due appellant conceded the indebtedness due him, and as heretofore stated, the judgment was satisfied therefrom. This was in accord with the agreement entered into by appellant with respondent. The record presented to us justifies the assertion that the judgment of the court was both legal and equitable. Appellant was attempting surreptitiously to acquire for himself certain of the funds out of which the court later directed payment in favor of respondent. The evidence amply supports the conclusion arrived at by the trial court that the amount agreed to be paid

to appellant was the sum of $5,742, one-half of which amounted to $2,871, and that since the filing of the action appellant had paid to respondent $274, leaving a balance due and owing as of March 6, 1939, of $2,597, which with interest to the date of the judgment amounted to the sum of $2,870.

The attempted appeal from the order denying a new trial is dismissed and the judgment is affirmed.

York, P. J., and Doran, J., concurred.